OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
TONY LOPRESTI, State Bar #289269
KAVITA NARAYAN, State Bar #264191
MEREDITH A. JOHNSON, State Bar #291018
RAPHAEL N. RAJENDRA, State Bar #255096
LAURA S. TRICE, State Bar #284837
HANNAH M. GODBEY, State Bar #334475
TAYRYN A. EDWARDS, State Bar #344959
70 West Hedding Street, East Wing, Ninth Floor
San José, California  95110-1770
Telephone: (408) 299-5900
Facsimile:  (408) 292-7240
E-Mail:	Tony.LoPresti@cco.sccgov.org
	Kavita.Narayan@cco.sccgov.org
	Meredith.Johnson@cco.sccgov.org
	Raphael.Rajendra@cco.sccgov.org
	Laura.Trice@cco.sccgov.eorg
	Hannah.Godbey@cco.sccgov.org
	Tayryn.Edwards@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
San Jose Division

| | |
|---|---|
| **County of Santa Clara**, <br><br>             Plaintiff, <br><br>     v. <br><br> **Donald J. Trump**, et al., <br><br>             Defendants. | No. 5:25-cv-00981-EKL <br><br> **COUNTY OF SANTA CLARA'S RESPONSE TO ORDER TO SHOW CAUSE** <br><br> Hearing Date:  None scheduled <br> Time: <br> Judge:    Hon. Eumi K. Lee <br> Place: <br><br> Trial Date:    Not set |

**INTRODUCTION**

On February 21, 2025, this Court issued an Order to Show Cause directing the parties to file simultaneous briefing addressing "why this action should not be stayed" given the Ninth Circuit's decision in *Washington v. Trump* not to stay an order preliminarily enjoining the federal government "from enforcing or implementing portions of Executive Order 14160." *See* OTSC [ECF No. 33]. Santa Clara faces the same risk now as it faced when this Court approved an expedited briefing and hearing schedule. Today, as then, other proceedings could at any time expose Santa Clara to *exactly* the irreparable harms—whether for weeks, days, or even a moment—that Santa Clara's preliminary injunction motion seeks to prevent. This reality gives rise to three reasons, each grounded in *Landis v. North American Co.*, 299 U.S. 248 (1936), and its progeny, why this case should not be stayed despite the Ninth Circuit's decision to let stand a preliminary injunction issued by a different court in a different action brought by different parties.

*First*, a stay would unequivocally undermine, not advance, judicial economy and the "orderly course of justice." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024). The *Washington* matter might well be decided on unrelated grounds. In the meantime, a stay of this case would, by its very design, stunt the percolation of novel legal issues. Any suggestion that a stay could advance docket efficiency must yield to the Supreme Court's recognition that judicial efficiency is meaningfully advanced when multiple district courts lend their wisdom to appellate courts by rendering reasoned decisions on important and novel questions of law—particularly where, as here, the questions arise in litigation against the federal government.

*Second*, the law strongly disfavors stays where, as here, there is "a fair possibility" that a stay would work damage, hardship, or inequity on the party opposing the stay. *Id.* at 1087 (citing *Landis*, 299 U.S. at 255). Given the government's ongoing efforts to dismantle the existing injunctions, proceedings occurring elsewhere during the proposed stay may well leave Santa Clara exposed to the harms its motion seeks to avoid. A stay would disenfranchise Santa Clara, leaving it to simply hope that the strategic decisions of advocates for other parties in other forums will protect its interests.

*Third*, the proposed stay is indefinite because it depends on the outcome of proceedings over which this Court has no control. This case's circumstances cannot support the "greater showing"

necessary "to justify" an indefinite stay. *Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000).

## DISCUSSION

### I. A Stay Would Undermine, Not Advance, the Orderly Course of Justice

Defendants may argue that a stay would promote judicial economy. Santa Clara does not dispute that *Washington* is an "independent proceeding[] which bear[s] upon th[is] case," *PG&E*, 100 F.4th at 1086, because it involves one of the claims Santa Clara asserts: whether the Executive Order contravenes the Citizenship Clause. That is the extent to which a stay could promote judicial economy—withholding this Court's assessment of the Citizenship Clause issue in favor of another court's view. And it would achieve that end at the cost of a deeper inefficiency that diminishes the "orderly course of justice" nationwide, especially for disputes involving the federal government.

As an initial matter, the *Washington* injunction does not address two of the claims Santa Clara presses in its motion—that the Executive Order violates the Immigration & Nationality Act and constitutional Separation of Powers principles—so there is no reason to expect the Ninth Circuit's disposition to resolve those issues, which provide independent bases for granting Santa Clara relief. The government's challenges to the *Washington* state plaintiffs' standing also turn on facts, arguments, and legal contexts specific to those states and that case. These distinctions raise the possibility that resolution of the *Washington* appeal could have no direct bearing here.

Even if the *Washington* appeal could address all the issues implicated by Santa Clara's motion, a stay would contravene appellate courts' oft-repeated desire for percolation of legal issues. It would prevent this Court from contributing to a national dialogue on frontier legal issues, depriving appellate courts of the "benefit of additional viewpoints," *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1030 (9th Cir. 2019), and "a wider range of perspectives," *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018) (citations omitted). Some have expressed percolation-related doubts about nationwide injunctions *vel non*, *e.g.*, *Doe #1 v. Trump*, 957 F.3d 1050, 1094 (9th Cir. 2020) (Bress, J., dissenting), but this case proves the overbreadth of that concern: it is fully within the province of the district courts to both grant nationwide injunctions *and* participate in adjudicating cutting-edge legal issues. Even if a stay might ease the Court's own docket, *see PG&E*, 100 F.4th at 1085, it would generate deeper inefficiency by foreclosing percolation that "may yield a better

informed and more enduring final pronouncement" on the questions raised here, *Arizona v. Evans*, 514 U.S. 1, 23 n.1 (1995) (Ginsburg, J., dissenting). Indeed, a stay would treat the *Washington* injunction as obviating Santa Clara's showing of irreparable harm, even though the law rejects that premise. Pl.'s Mot. to Shorten Time [ECF No. 24], at 3; *California v. HHS*, 941 F.3d 410, 421 (9th Cir. 2019), *rev'd on other grounds sub nom. Little Sisters of the Poor v. California*, 141 S. Ct. 192 (2020); *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 59-60 (D.D.C. 2020).

These considerations carry substantial, perhaps dispositive, weight in cases brought against the federal government, where judicial economy must be considered from a systemwide perspective. The Supreme Court has made this point clearly in the context of issue preclusion, which, like the *Landis* stay, is intended to conserve judicial resources. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The Supreme Court justified its holding that "nonmutual offensive collateral estoppel simply does not apply against the government" on the ground that "a contrary result might disserve the economy interests in whose name estoppel is advanced," as it would "substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *United States v. Mendoza*, 464 U.S. 154, 160, 162-63 (1984); *accord State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 713-14 (9th Cir. 2005). A stay in this case would achieve precisely the *inefficiency* that *Mendoza* sought to avoid: ossification on important legal questions raised in litigation against the federal government. Indeed, Santa Clara has not identified any Ninth Circuit case sustaining a *Landis* stay in a case against the federal government over the objection of the other party.[1] By contrast, the Ninth Circuit *has* held that ordering a *Landis* stay in such a case based on an expectation that the Ninth Circuit could soon decide another appeal raising "similar issues" was an abuse of discretion. *Yong*, 208 F.3d at 1118.

**II.     A Stay Would Harm Santa Clara Without Countervailing Benefit to the Government**

"The proponent of a stay bears the burden of establishing its need," *Clinton v. Jones*, 520 U.S. 681, 708 (1997), and that burden is especially heavy if there is "even a fair possibility" that a stay could impose hardship on a party opposing the stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098,

---

[1] No party objected to the district court stays entered in *Washington* and *Thien Le*. Minute Order, *Washington v. Trump*, No. 2:25-cv-127-JCC (W.D. Wash. Feb. 7, 2025) (ECF No. 188); Orders Regarding Joint Stipulations, *Thien Le v. Trump*, No. 8:25-cv-104-MEMF (C.D. Cal. Jan. 24 and Feb. 19, 2025) (ECF Nos. 15, 19).

1110-11 (9th Cir. 2005) (quoting *Landis*, 299 U.S. at 255).  Here, it is more than possible that a stay would "work damage" to Santa Clara.  *Id.*  Most prominently, the Ninth Circuit's rejection of a stay pending appeal does not place the *Washington* injunction on firm footing.  And there is every possibility that proceedings in other forums will limit or dissolve the existing injunctions, leaving Santa Clara exposed to the harms that its motion seeks to prevent.  Any argument to the contrary conflates the temporary and provisional nature of preliminary injunctions with the finality of permanent injunctions, applies the more exacting immediacy standard appropriate only for temporary restraining orders, and fails to account for the reality that the federal government is seeking rulings across the nation to invalidate nationwide injunctions against the Executive Order.

By its nature, the *Washington* injunction is non-permanent.  Even as the Ninth Circuit awaits briefing on the federal government's appeal, the Washington district court retains authority to modify, narrow, or dissolve its injunction in light of new facts or inequities.  *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098-99 (9th Cir. 2002).[2]  There is also a fair possibility the federal government will seek a stay of the *Washington* injunction in the Supreme Court or by asking for reconsideration of the motions panel's decision.  *See* 9th Cir. R. 27-10(b).  Indeed, the government's emergency stay motions in the First and Fourth Circuits mirror its motion in the Ninth Circuit and indicate a nationwide appellate strategy to dissolve or narrow any rulings enjoining the Executive Order.[3]  Those efforts could succeed at any time, leaving Santa Clara deeply and irreparably prejudiced if this Court declines to rule on Santa Clara's fully briefed injunction motion.

The very real risk that Santa Clara could be exposed to the harms laid out in its motion underscores the importance of the Supreme Court's observation that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255 (emphasis added).  This is precisely what a stay would accomplish: it would strip Santa Clara of the agency to protect its own interests

---

[2] This consideration is not merely theoretical.  In recent weeks district courts have dissolved provisional injunctive relief against the government after further examination.  *E.g.*, *Am. Foreign Serv. Ass'n v. Trump*, --- F. Supp. 4th ---, 2025 WL 573762 (D.D.C. Feb. 21, 2025); *Am Fed'n of Gov't Emps. v. Ezell*, No. 25-10276-GAO, 2025 WL 470459 (D. Mass. Feb. 12, 2025).

[3] *See* Order Denying Stay Pending Appeal, *CASA, Inc. v. Trump*, No. 25-1153 (4th Cir. Feb. 28, 2025) (ECF No. 29); Defs.' Mot. for Stay Pending Appeal, *New Jersey v. Trump*, No. 25-1170 (1st Cir. filed Feb. 27, 2025).

and subject it to the litigation strategies and tactical choices of advocates representing other parties in other forums based on different facts.[4]  That those advocates are skilled does not change the fact that a stay would prejudice Santa Clara by bucking the "deep-rooted historic tradition that everyone should have his own day in court." *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996).

In view of the significant prejudice to Santa Clara, it is difficult to imagine how Defendants could present a "clear case of hardship or inequity." *Landis*, 299 U.S. at 255.  To be sure, it may tax Defendants' counsel to litigate this case while simultaneously seeking to dismantle preliminary injunctions issued elsewhere.  "[B]ut being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112.  That rule applies with particular force here, as the Supreme Court has recognized the value of multiple suits against the federal government.  The government cannot be heard to complain about defending multiple suits when it enjoys immunity from nonmutual offensive collateral estoppel; it has brought any litigation burdens on itself by taking disruptive, harmful, and broad-based actions; and it is challenging nationwide injunctions on grounds that, taken to their logical conclusions, would require every person to bring their own lawsuit to protect themselves from federal overreach.

### III.     This Case Does Not Support the Greater Showing Required for an Indefinite Stay

The suggested stay is of indefinite, and potentially lengthy, duration.  There is no telling when the appeal will be resolved: no Ninth Circuit rule requires the merits panel to issue a decision within a time certain after the June 2025 oral argument, and the appeal would continue until the disposition of any petition for certiorari the federal government may file. *Compare Yong*, 208 F.3d at 1119 & n.2.  Since the hardships and equities already disfavor a stay, it is all but impossible to make the "greater showing" required to justify a proposed stay whose "term is indefinite." *Id.*

### CONCLUSION

For the foregoing reasons, this Court should not stay this action, but instead schedule a hearing on Santa Clara's motion for a preliminary injunction.

---

[4] Even though *Landis* does not require identical parties in the "independent proceeding" in whose light a stay is ordered, in most Ninth Circuit cases upholding *Landis* stays the *very party objecting to the stay* was involved in the independent proceeding. *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983); *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *CMAX, Inc. v. Hall*, 300 F.2d 265, 270 (9th Cir. 1962); *see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 184 (1952).

Dated: February 28, 2025

Respectfully submitted,

TONY LOPRESTI
COUNTY COUNSEL

By: /s/ Raphael N. Rajendra
RAPHAEL N. RAJENDRA

KAVITA NARAYAN
MEREDITH A. JOHNSON
LAURA S. TRICE
HANNAH M. GODBEY
TAYRYN A. EDWARDS

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

3217487

6
Plaintiff County of Santa Clara's Response to Order to Show Cause        Case No. 5:25cv981-EKL